**CONNELL & DUFFY, P.C., Appellant,**

v.

**William VENINGA, Defendant,**

**and**

**Farmers National Bank, Garnishee,**

**Valley State Bank, Intervenor–Appellee.**

No. 87–1261.

Supreme Court of Iowa.

April 19, 1989.

John P. Duffy of Connell & Duffy, P.C., Storm Lake, for appellant.

Thomas L. Flynn and Thomas T. Tarbox of Wimer, Hudson, Flynn & Neugent, P.C., Des Moines, for appellee.

LAVORATO, Justice.

At issue in this garnishment proceeding is whether the Valley State Bank or Connell & Duffy, P.C., is entitled to certain rents and profits in the hands of a receiver. The district court ruled in Valley's favor. After Connell & Duffy appealed, we transferred the case to the court of appeals, which reversed in a two-to-one decision. On further review, we now vacate the decision of the court of appeals and affirm the judgment of the district court.

I. On March 13, 1985, Valley brought a foreclosure action against Louis and William Veninga, seeking a judgment on promissory notes. Valley also sought foreclosure of a deed of trust on 320 acres of farmland owned by the Veningas as tenants in common. The district court, on Valley's application, appointed a receiver, Farmers National Bank, to take possession of all rents and profits from the property.

Several months later, the Equitable Life Assurance Society of the United States started a foreclosure action in which it named Louis Veninga, William Veninga, and Valley as defendants. The Veningas were named because they had executed a mortgage with Equitable on substantially the same real estate covered by Valley's deed of trust. Valley was named as a party because the deed of trust in question created a lien in favor of Valley that was junior to Equitable's lien.

Equitable's foreclosure action ultimately went to judgment. In November 1985 the Veningas' interest in the real estate was sold to Equitable at a sheriff's sale.

The following April, Valley's foreclosure action was tried. In June the district court entered its decree.

Among other things, the district court found that: (1) Louis and William Veninga were jointly and severally liable, as partners, on the note to Valley in the amount of $365,942.75, together with interest and costs; (2) the 320 acres were not partnership property; and (3) Louis had signed William's name to Valley's deed of trust without William's authorization.

The court ordered that: (1) the deed of trust be foreclosed against Louis, (2) a special execution be issued against his interest so that it could be sold to satisfy the judgment, and (3) the clerk issue a general execution against the undivided interest of William in the real estate. The court then entered the following order:

It is the further order, adjudication, and decree of this court that in the event the interests of real estate of the defendants do not sell for sufficient sums to satisfy the judgments herein, the net proceeds from the rents, issues and profits which may be had therefrom shall be applied to said judgment until fully satisfied.

In addition, the court continued the receivership. The Veningas did not appeal from the court's decree.

Pursuant to the court's decree, the clerk did issue a general execution against William's interest in the real estate. The sheriff levied upon William's interest and scheduled a sheriff's sale for August 11, 1986. The sheriff then filed a petition of intervention, asking the court for relief

from the scheduled sale because the property had already been sold to Equitable at a sheriff's sale in November 1985. Valley agreed to postpone the scheduled sheriff's sale because it had elected to redeem the property from Equitable.

On August 12, 1986, Valley did redeem it, paying the sum of $330,488.96. This figure represented the amount of Equitable's judgment plus $23,819.40 in accrued interest. In addition, Valley bid in an extra $200,000 for the property. The $200,000 was credited against Valley's judgment in its own foreclosure action, leaving a deficiency on the judgment of $165,942.75 plus costs, attorney's fees, and additional interest. Valley ultimately received a sheriff's deed to the property in January 1987.

In October 1986 William signed a confession of judgment for $30,000 in favor of Connell & Duffy, a Storm Lake law firm. The debt arose out of the law firm's legal representation of William in several cases, two of which included Valley's and Equitable's foreclosure actions. On November 10, following an execution request by the law firm, the clerk issued a general execution against William's property. Pursuant to the execution, a notice of garnishment was served on the receiver, Farmers National, on November 13.

In answering the garnishment, Farmers National denied owing William any money and denied holding under its control any "property, rights or credits" belonging to William.

The following month, Connell & Duffy filed a pleading controverting the receiver's answers to the garnishment, claiming that the answers were false. The law firm alleged that the receiver was appointed pursuant to a deed of trust that was not binding on William; hence, it had no right to retain rents collected on behalf of William. A hearing on the matter was set for January 8, 1987. The order setting the hearing provided that notice of the hearing be given to William and Farmers National at least ten days prior to January 8.

On January 8 Valley intervened in the garnishment proceeding. The district court's order following the January 8 hearing recites that Connell & Duffy, Valley, and Farmers National all appeared through counsel and that William appeared in person. In its January 8 order the district court (1) sustained Valley's petition for intervention, (2) approved the parties' agreement that the matter be submitted to the court on the stipulated facts on January 23, and (3) set a briefing schedule for all the parties. Connell & Duffy was given until January 23 to file its brief; William and Farmers National were given until February 6 to do so; Connell & Duffy's rebuttal brief was due February 13, after which the matter would be deemed submitted.

On August 11, 1987, the district court ruled on the garnishment issue. The court interpreted its June 6 foreclosure decree as granting Valley the rents and profits from the real estate to the extent the interests of the Veningas in the property did not sell for enough to satisfy Valley's judgment in full. Because William did not appeal from the foreclosure decree, the court concluded that it was res judicata as to him. Reasoning that Connell & Duffy's rights could rise no higher than those of William, the court further concluded that the law firm's rights were not "equal or superior to those" of Valley. It is from this ruling that Connell & Duffy appealed. William did not appeal.

▮ II. The court of appeals correctly noted that, in the absence of a statute, a personal judgment is never a lien upon a defendant's personal property without a levy of execution. *See Payette v. Marshall County*, 180 Iowa 660, 664, 163 N.W. 592, 594 (1917). In Iowa, judgments are liens only on real estate. *See* Iowa Code § 624.23(1) (1987). In the court of appeals' view, then, Valley had to levy on William's interest in the rents and profits before a lien on his interest could exist in its favor. This, the court of appeals said, was never done. The court of appeals concluded that Connell & Duffy, which had levied on William's interest in the rents and profits, was therefore entitled to his share.

The court of appeals correctly states the law. Its reasoning, however, is faulty because it is based on an erroneous premise: that Connell & Duffy, by its levy of execution on the rents and profits in the hands of the receiver, obtained a lien on William's share. As a general rule,

> [l]evy of ... property in receivership, without the consent of the court appointing a receiver, ... is not permissible and has no effect other than to constitute contempt of court.

65 Am.Jur.2d *Receivers* § 168, at 992 (1972); *see also Martin & Bros. v. Davis & Co.*, 21 Iowa 535, 537 (1866) (judgment creditor levied on personal property in hands of receiver appointed by the court). The rationale for the rule is that a "receivership operates to protect a receiver against interference with the receivership property by suit." The court, thus, has a duty to protect the receiver against such interference. 65 Am.Jur.2d *Receivers* § 168, at 992.

Here, Connell & Duffy did levy execution on property in the hands of a receiver. The record is devoid of any evidence of any prior consent on the part of the court allowing the law firm to do so. Thus, Connell & Duffy had no right to levy such execution, and its doing so had no legal effect.

William, the only party who could challenge the district court's interpretation of the June 6 foreclosure decree in the garnishment proceeding, did not appeal. The district court's interpretation must therefore stand as to him.

III. Having unlawfully levied execution on assets in the hands of a receiver, Connell & Duffy has no legal right to proceed further with the garnishment proceedings. Accordingly, we vacate the decision of the court of appeals and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.

All justices concur, except HARRIS and LARSON, JJ., who concur in the result, and SNELL, J., who dissents without opinion.